# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| _____ | : | |
| | : | Case No. |
| JOSEPH S. ELDER, | : | |
| of Windsor, Connecticut | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CIVIL ACTION |
| | : | |
| OPERATIONS HOLDINGS, INC., | : | |
| 481 8th Avenue A12 | : | |
| New York City, New York 10001, | : | |
| | | |
| TRONC, INC., | : | |
| 435 North Michigan Avenue | : | |
| Chicago, Illinois 60611, | : | |
| | | |
| NEXSTAR MEDIA GROUP, INC. | : | |
| 545 E. John Carpenter Freeway | : | |
| Suite 700, Irving, Texas 75062, | : | |
| | | |
| TRIBUNE BROADCASTING, LLC | : | |
| 435 North Michigan Avenue | : | |
| Chicago, Illinois 60611, | | |
| | | |
| and | : | |
| | | |
| TRIBUNE MEDIA COMPANY | : | |
| 435 North Michigan Avenue | : | |
| Chicago, Illinois 60611 | : | |
| Defendants | : | July 25, 2017 |
| _____ | : | |

# **COMPLAINT**

Plaintiff, Attorney Joseph S. Elder, brings this action against the named defendants for defamation and invasion of privacy by false light, their public statements and publications both defaming him and placing Attorney Elder in a false light in the public eye, causing him actual damages, general damages, and giving rise to punitive damages as well, including continuing and aggravated harm to the Plaintiff's professional, business and personal reputation.

## THE PARTIES

1. The plaintiff, Attorney Joseph S. Elder, is an individual with a current and usual residence in the Town of Windsor, County of Hartford and State of Connecticut, having maintained continuously his principal abode, domicile and residence within the State of Connecticut throughout his career as an attorney, having been admitted to the Connecticut bar during 1985. It is his intention to remain indefinitely a citizen, domiciliary and resident of the State of Connecticut.

2. The defendant Operations Holdings, Inc. is a corporation incorporated and organized under the laws of the State of Delaware, maintaining its principal office at 481 8th Avenue A12, New York City, New York 10001. Said corporation is the owner of *The Washington Times*, a daily broadsheet published in Washington D.C. with its principal address being 3600 New York Avenue NE, Washington, D.C. 20002 and maintaining a website at http://www.washingtontimes.com. It was founded in 1982 by the founder of the Unification Church, Sun Myung Moon, and until 2010 was owned by News

World Communications, an international media conglomerate associated with the Unification Church.

3. The defendant Tronc, Inc. (formerly known as Tribune Publishing Company) is an American newspaper print and online media publishing company having its corporate headquarters at 435 North Michigan Avenue, Chicago, Illinois 60611 and Web url at http://www.tronc.com, self-defining itself as operating a diversified media and marketing-solutions company, offering sports, entertainment, business, real estate, travel news and information in various markets throughout the United States.   It was incorporated and organized under the laws of the State of Delaware. Tronc, Inc.'s major newspaper assets include *The Hartford Courant*, Connecticut's largest daily morning newspaper that also has an on-line presence at http://www.courant.com.

4. The defendant Nexstar Media Group, Inc. is the largest television station operator in the United States with its corporate headquarters located at 545 E. John Carpenter Freeway, Suite 700, Irving, Texas 75062.  It is organized under the laws of the State of Delaware.  Said defendant owns 171 television stations, including that one known as WWLP Channel 22 licensed to serve the Springfield, Massachusetts market.   Channel 22, an NBC affiliate, maintains an on-line presence at http://wwlp.com ("22 News WWLP.com Working For You).   Nexstar Media Group, Inc., (formerly Nexstar Broadcasting Group, Inc.) acquired WWLP virtual Channel 22 as part of Nexstar's successful acquisition of Media General, Inc., a Virginia

corporation, completing the purchase on or about January 17, 2017 following FCC approval granted on January 11, 2017.

5.  The defendant Tribune Broadcasting Company, LLC is an American media company that operates as a subsidiary of Tribune Media Company, a media conglomerate based in Chicago, Illinois. Tribune Broadcasting Company, LLC is organized under the laws of the State of Delaware.   Its corporate headquarters are located at 435 North Michigan Avenue, Chicago, Illinois 60611.   It owns or operates approximately forty-two television stations throughout the United States, including that one known as WTIC virtual Channel 61, a FOX affiliate, licensed to serve the Hartford, Connecticut market.  Channel 61 maintains an on-line presence at http://fox61.com.

6.  The defendant Tribune Media Company owns the defendant Tribune Broadcasting Company, LLC, which operates as its wholly owned subsidiary. Tribune Media Company's corporate headquarters are located at 435 North Michigan Avenue, Chicago, Illinois 60611.  In both its public statements and in filings with the Securities and Exchange Commission (SEC) Tribune Media Company represents that it is the owner of Tribune Broadcasting Company, LLC.  Said defendant is incorporated and organized under the laws of the State of Delaware.

### JURISDICTION AND VENUE

7.  Plaintiff brings his complaint under federal diversity jurisdiction, 28 U.S.C. 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.   Elder is a

citizen of the United States and a citizen of the State of Connecticut with the current intention of remaining so indefinitely.  The defendants are all entities incorporated and / or organized in states other than Connecticut (Delaware and Iowa) and their principal corporate or company headquarters are all located in states other than Connecticut (Illinois, Iowa, New York and Texas), as set forth in paragraphs 3 through 8.

8.  Venue is proper for the defendants pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(e).

## FACTS COMMON TO ALL COUNTS

9.  The plaintiff, Attorney Joseph S. Elder (hereinafter referred to as "Elder"), was admitted to the Connecticut bar on May 16, 1985.

10. On April 7, 2014 Wesley Spears (hereinafter referred to as "Spears"), also an attorney admitted to the Connecticut bar, filed a grievance complaint (dated April 4, 2014) AGAINST ELDER with the Connecticut Statewide Grievance Committee.

11. Spears was a licensed Connecticut lawyer who is charged with knowledge of the rules governing professional conduct and the disciplinary process, including the general six year limitation on the filing of complaints set forth in Practice Book Sec. 2-32(a)(2)(E), yet he waited more than nine and one-half years after the alleged attorney misconduct before filing his grievance on April 4, 2014 alleging, as its misconduct basis, the non-payment of a debt that had been discharged in bankruptcy MORE THAN  thirteen months earlier.

12. Elder had a spotless record with regard to attorney discipline at the time, having never been sanctioned in any manner by any court, committee, board or agency charged with overseeing the ethical conduct of attorneys admitted to practice in the courts of Connecticut.

13. Spears' complaint was that Elder, in his capacity as an attorney, had not paid a money judgment that the complainant had obtained in a prior civil action. That obligation had been legally discharged in February 2013 as part of a Chapter 7 proceeding.

14. The complainant, Spears, was simultaneously actively pursuing a collateral collection action against Elder in the United States Bankruptcy Court, District of Connecticut at Hartford. In his grievance filing Spears did not disclose either the bankruptcy discharge or his ongoing litigation in the bankruptcy court to contest the same.   Nor did he disclose that a trial in federal bankruptcy court was scheduled for June, 2014. The grievance had the appearance of being an attempt to coerce Elder into a settlement of that claim.   After losing a second motion for summary judgment in the bankruptcy court, the complainant Spears withdrew his baseless adversary action on the eve of trial after being criticized by the presiding judge in connection with his summary judgment motion.

15. Spears' grievance complaint referred to a civil judgment in the amount of $73,000 that he had secured against Elder in 2008.

16. Spears had commenced an action against Elder by complaint dated July 15, 2006, alleging six counts: impersonation (Count One), defamation (Count

Two), slander (Count Three), libel (Count Four), fraud (Count Five), and legal malpractice (Count Six).

17. During the trial, Spears, lacking evidence to support and prove the majority of his allegations, withdrew four of the six counts, including Count One alleging impersonation, and proceeded on Counts Three and Five only.

18. Impersonation is a crime in Connecticut and is defined by Sec. 53a-130 of the General Statutes, which provides that a person is guilty of criminal impersonation when he: (1) Impersonates another and does an act in such assumed character with intent to obtain a benefit or to injure or defraud another; or (2) pretends to be a representative of some person or organization and does an act in such pretended capacity with intent to obtain a benefit or to injure or defraud another; or (3) pretends to be a public servant other than a sworn member of an organized local police department or the Division of State Police within the Department of Public Safety, or wears or displays without authority any uniform, badge or shield by which such public servant is lawfully distinguished, with intent to induce another to submit to such pretended official authority or otherwise to act in reliance upon that pretense.

19. The jury verdict and court judgment were based exclusively on Counts Three and Five (slander and fraud).

20. Spears sought damages for injury to his claimed good reputation.  However, on September 18, 2008, prior to the trial, Spears filed a motion *in limine* in which he sought an order precluding Elder from making reference during trial to any of Spears' criminal records which were erased pursuant to § 54-142a

of the Connecticut General Statutes.  The trial court denied his motion and ruled that the erasure statute did not apply.

21. During the trial, the court heard additional argument on Spears' motion *in limine* to preclude Elder from introducing evidence of prior bad acts committed by Spears.  Spears argued that since he was not offering any evidence "regarding his own reputation," Elder should not be permitted to introduce any bad acts evidence.  The bad acts evidence which Elder wanted to introduce consisted of evidence that Spears had committed two assaults, one trespass, one extortion and one charge of prostitution.  The parties agreed that Spears was arrested on some of the charges but never convicted.

22. During the trial Spears falsely told the jury that he had never been arrested when asked on cross examination several times by Elder as to whether he had been arrested.

23. In fact, Spears had retained Elder to represent him in one of the subject arrests.  In an attempt to correct this false testimony and the false impression it made upon the jury, Elder asked Spears whether he would waive the attorney-client privilege and allow Elder to testify that Elder had represented Spears when he had been arrested.  Spears refused to waive the privilege.

24. The foregoing factual details of Spears' civil case against Elder were matters of public record, readily available for review and inspection by the defendants, and either known to them or readily discoverable upon reasonable inquiry and fact-checking.

25. On April 11, 2014 statewide bar counsel unilaterally, without discussion of any tolling circumstances or invocation of any recognized exception to the six year court rule limiting the filing of grievances, referred the complaint to the Hartford J.D. for GA 13 & the Town of Hartford Grievance Panel pursuant to Connecticut Practice Book Section 2-32(a)(1), despite the fact that it had been filed more than nine and one-half years after the complained of misconduct.

26. On June 3, 2014 the Hartford Judicial District Grievance Panel for Geographical Area 13 and the Town of Hartford filed its probable cause determination finding probable cause that Elder violated 4.1(1) and 8.4(3) of the Rules of Professional Conduct; now focused, not on a failure to pay a judgment that had been lawfully discharged pursuant to a report of the bankruptcy court trustee, but on two short telephone calls made in the summer of 2004 by a non-client to Elder, calls which were the subject of Spears' civil complaint against Elder. Once again, the finding ignored the court rule requiring grievances to be timely filed no later than six years following the complained of conduct.

27. The first of the complained of telephone calls took place on July 27, 2004 wherein Dean Cyr (hereinafter referred to as "Cyr"), a member of the Plainville police department, called Elder, identifying himself, not honestly as a police officer conducting an investigation, but rather as a drug dealer seeking to hire legal counsel. Cyr had obtained the telephone number (982-0183) at the scene of an arrest the previous day. He wrote the number

down, not on Plainville Police Department forms, but in what he described as his "personal notebook, which I carry in my shirt pocket."

28. On direct examination, Cyr testified that he "made believe [he] was a prospective client in need of an attorney."  He lied and impersonated a fictitious drug dealer.  In fact, his self-created and self-directed attempted ambush was a personal vendetta and not a professional undertaking authorized by any supervisor or department authority.  Clearly, his goal was to entrap or induce an attorney into somehow giving him advice that in and of itself would constitute a crime or to knowingly accept fees earned by illicit drug sales; it was not to secure information about an ongoing police investigation.

29. Cyr admitted that he wanted "to get" the lawyer who had given advice to one Eric Krajewski, a target of a joint investigation of the Plainville and the Statewide Narcotics Task Force, due to a botched effort to secure a residence without an arrest warrant, which incident had occurred on July 26, 2004.  Cyr had no role in that investigation and operation.

30. Cyr testified that as shift supervisor he was "extremely" angry about the incident; and his anger extended to the police officers on the scene that he felt had embarrassed him.

31. With regard to the arrest of Eric Krajewski, the case was essentially wrapped up the evening of its occurrence "or shortly thereabouts."

32. Cyr had no interest in conducting any further investigation of Krajewski, and had never been a part of the joint task force investigation.

33.  Cyr testified that he "was upset over my officers letting him in the home and I wanted to know what took place and why things happened like they did."

34. Cyr's rogue investigation was not of Krajewski, but rather of his own police officers and the attorney who had given Krajewski advice on July 26, 2004. He testified it "was basically like a limited internal affairs investigation of the officers on what happened and why they let Mr. Krajewski into the house and the other thing I wanted to know who his attorney was that gave the advice;" and that he was sticking to seeking the arrest of Krajewski's attorney "for conspiracy."

35. Cyr began his personal investigation on July 27, 2004 by deciding to call the telephone number on Krajewski's seized cell phone that corresponded with the time of the incident.

36. Cyr did not use an official Plainville Police Department telephone to place the call. Nor did he use police department investigative tools and procedures to ascertain the ownership of the telephone number in question.  He made no attempt to verify the number ownership by conducting a standard investigation.

37.  Instead, Cyr used his own personal cell phone to proceed on his personal quest.

38. He claimed that he intentionally decided to misrepresent himself because he did not think that the attorney target of his investigation would knowingly cooperate with him in his effort to secure that attorney's arrest.

39. Cyr admitted that the call was based on a deceptive practice, the claimed right of investigating police officers to be dishonest.

40. Cyr claimed that he identified himself as a prospective client: "I told him I was pulled over by the police and a police dog found marijuana in my trunk… Toward the end of the call he said he had to go.  So I said what's your name, and he said Wes Spears."

41. Nothing in Elder's conduct with regard to said July 2004 telephone call can be reasonably construed to constitute impersonation; Cyr having instigated the communication under admittedly false pretenses, creating a fictitious person from whom Elder could not possibly gain any benefit, injure or defraud.

42. When Elder answered this July 27, 2004 telephone call placed by a misidentified person posing as a drug dealer seeking legal counsel, Elder did not know the caller, a complete stranger calling a cell number and not Elder's public law office number.  It was from a person unknown to Elder and certainly not known by him to be a police officer, who asked a peculiar red flag question about the identity of the attorney the caller had himself already selected to call. It was an abnormally peculiar call.  At no point did Cyr reveal his true identity or purpose.

43. During the second telephone call (August 25, 2004) initiated by the same person but apparently dropping his false disguise, it was the same voice as the person who thirty days earlier had identified himself as a drug dealing criminal defendant.

44. The second call to Elder was made on August 25, 2004 and was tape-recorded by Cyr. It was a two-minute call the purpose of which was to inform Elder that Cyr intended to seek the attorney's arrest and professional discipline.

45. During the 2008 civil trial Cyr claimed the August 25 call was made from the Plainville Police Department and was recorded in accordance with standard policy to record all calls.  During his testimony in 2015 at Elder's disciplinary hearing, Cyr was uncertain as to where he had placed the call from, wavering and testifying it was "From the Plymouth or Plainville police station;" another indication his entire foray was personal and not part of a true police department investigation.

46. Cyr mentioned "Attorney Spears" to which Elder responded, "Who?" and then "Yes," in a simple attempt to draw out the caller.  Elder never said that he was Spears, and, in fact, later asked the caller as to whether he wanted to speak to Spears ("him").

47.  Cyr proceeded to describe his investigation and stated that he'd rather speak to him in person. Elder then responded to this invitation by stating "Well you want to speak to *him*?" meaning Attorney Wesley Spears and not the call recipient.

48. Cyr did not pause to inquire who the "him" was, but immediately advised Elder, "No, I want to speak to you."  Cyr advised Elder "But my intentions are to apply for an arrest warrant for you…And when we get that done and we get it signed I will be following up with the Grievance Committee…So I'm just

giving you a heads up...Take Care. Bye-bye." The tone was taunting and laced with sarcasm. A tape of the telephone call was available to the defendants as a court exhibit.

49. Cyr was unsuccessful in obtaining an arrest warrant, the State's Attorney finding his application insufficient and denying it for lack of probable cause.

50. Cyr made no routine investigative attempt to interview Attorney Wesley Spears at his law office prior to filing his application for an arrest warrant. He did not bother to travel to the attorney's office. One visit would have demonstrated his error in identifying Spears as Krajewski's attorney.

51. Cyr made no effort to determine the identity of Krajewski's attorney by simply checking with the prosecutor's office following Krajewski's arrest and court appearance. One telephone call would have demonstrated his error in assuming Spears was Krajewski's attorney: the public record would have readily shown Elder to be Krajewski's counsel.

52. Cyr did file a grievance complaint against Spears, and in his report he claimed that he had spoken with Spears at Spears' law office, separate and apart from either of the two telephone calls he placed to Elder at the "personal notebook" number of 982-0183. That statement was untruthful and raised a red flag in the minds of Spears and his counsel; Spears' attorneys told Cyr that such a misrepresentation required them to advise Spears not to cooperate with Cyr in his alleged investigation.

53. On October 16, 2008 Cyr testified, "I can understand that" in response to Spears' question: "And you understand why I would be suspicious of

somebody saying you talked to me at my office, because that didn't happen. Correct?"

54. The foregoing factual details of Dean Cyr's activities concerning Elder were matters of public record, readily available for review and inspection by the defendants, and either known to them or readily discoverable upon reasonable inquiry and fact-checking.

55. The State of Connecticut's Office of Chief Disciplinary Counsel commenced its disciplinary action against Plaintiff by presentment complaint (hereafter referred to as the "Complaint"), dated March 2, 2015, alleging violations of Rule 4.1 and Rule 8.4(3) of the Rules of Professional Conduct arising out of the two telephone calls which occurred during the summer of 2004 (July 27, 2004 and August 25, 2004), despite the fact that the subject grievance complaint had not been timely filed within six years of the complained of alleged misconduct, despite the fact that it did not involve Elder's representation of any client, and despite the fact that Elder was being singled out as the only known attorney in the recorded history of Connecticut attorney discipline to be made the subject of a grievance prosecution after the lapse of more than nine years from the alleged misconduct, no tolling exceptions being applicable.

56. On July 1, 2015 Elder filed a motion to dismiss, invoking, *inter alia*, the general six year limitation on grievance complaints set forth in Practice Book Sec. 2-32(a)(E).

57. On July 28, 2015 the trial court entered a judgment based on Disciplinary Counsel's presentment complaint, adjudicating that Elder be suspended from the practice of law for a period of one year commencing September 1, 2015, without ruling on Elder's pending motion to dismiss.

58. Pursuant to the provisions of Practice Book Sec. 63-4, Elder filed an endorsed appeal from the judgment in the Appellate Court of the State of Connecticut on August 17, 2015, together with a Transcript Order, Docketing Statement, Statement for Pre-argument Conference, and Preliminary Statement of the Issues. Elder perfected his appeal, filing his principal Brief, Appendix and a Reply Brief, articulating three legal grounds for reversal of the trial court's decision.

59. On September 1, 2015 the trial court entered an order denying Elder's motion to dismiss.

60. On June 6, 2016 the Clerk of the Appellate and Supreme Court gave notice that the Supreme Court had transferred to itself the Elder's appeal pending in the Appellate Court pursuant to Connecticut General Statutes § 51-199 and Practice Book Rule 65-1.

61. "Because we have concluded that the limitation period is mandatory unless one of the exceptions set forth in § 2-32 (a) (2)(E) (i) or (ii) applies, we conclude that the trial court improperly denied the defendant's motion to dismiss," on May 2, 2017 the Supreme Court of the State of Connecticut unanimously reversed the decision of the trial court and remanded the case with an order directing the trial court to grant Elder's motion to dismiss.

62. Because the Supreme Court agreed with Elder that the complaint was time barred, reversing the trial court's decision on the first of three claimed errors, it noted Elder's further contention that, if the grievance complaint was not barred by Practice Book § 2-32 (a) (2) (E), the trial court had incorrectly concluded that he had violated the Rules of Professional Conduct. The court remarked, "Because we agree with the defendant [Elder] that the complaint was time barred, we need not address this claim."

63. This second issue raised by Elder was framed as follows: "Did the trial court err in entering a judgment suspending the defendant from the practice of law for a period of one year based, in part, upon an erroneous finding that the defendant had violated Rule 4.1 of the Rules of Professional Conduct by misrepresenting himself during two telephone conversations to a third person while acting in the course of his representation of a client, there being no evidence, let alone clear and convincing evidence, that the defendant was representing any client during the subject conversations instigated by a third party?"

64. The third issue raised by Elder in his appeal, also not addressed by the Supreme Court because of it agreement with his first claim of error, was framed as follows: "Did the trial court err in entering a judgment suspending the defendant from the practice of law for a period of one year in that the trial court's decision was an arbitrary and capricious exercise of power, there existing no precedent for imposing such a penalty in the case of such a stale and time-barred grievance against any Connecticut attorney; the entire

prosecution and imposition of a license suspension undertaken without reference to the lawful standards governing the timeliness of grievance complaint prosecutions or to any exceptional factual carve outs recognized therein or to any cited analogous circumstances, the only recognizable distinction being the ethnicity and race of the defendant, a citizen and attorney of African-American heritage whose criminal law practice and twenty year term as a member of Connecticut's Board of Pardons brought him within the crosshairs of those members of the bar and judiciary who did not appreciate his zealous representation of his clients and application of the law governing pardons; the trial court's judgment violating the defendant's right to the equal protection of the laws, guaranteed to him by both our state and federal constitutions and the capricious nature of the decision being compounded by the trial court's failure to conduct a hearing on the grievance complainant's "Motion to Intervene and Recuse Judge Robaina".

65. The court proceedings and all filings in Elder's said appeal, including Elder's Brief and Reply Brief setting forth his appeal issues and legal arguments in support thereof, were and are matters of public record, reviewed or readily reviewable by the defendants as part of their fact-checking protocols.

66. The court proceedings and all filings in Spears' civil case against Elder, together with all filings in Elder's appeal from the verdict and judgment rendered therein, including Elder's appellate Brief were and are matters of public record, reviewed or readily reviewable by the defendants as part of their fact-checking protocols.

**Count One**
**Defamation *Per Se***
**Joseph S. Elder v. Tronc, Inc.**

67. Elder re-alleges and incorporates by reference paragraphs 2 through 66 as if they had been fully set forth herein.

68. The defendant Tronc, Inc. (formerly known as Tribune Publishing Company) is an American newspaper print and online media publishing company having its corporate headquarters at 435 North Michigan Avenue, Chicago, Illinois 60611 and Web url at http://www.tronc.com, self-defining itself as operating a diversified media and marketing-solutions company, offering sports, entertainment, business, real estate, travel news and information in various markets throughout the United States.  Tronc, Inc.'s major newspaper assets include *The Hartford Courant*, Connecticut's largest daily morning newspaper that also has an on-line presence at http://www.courant.com.

69. In a report dated July 31, 2015 *The Hartford Courant* first published a news story entitled "Attorney Suspended For Impersonating Fellow Lawyer."

70. The first paragraph of said report began "Joseph Elder, a Hartford attorney who impersonated a fellow lawyer 11 years ago, spawning a long-running feud between the pair, will be barred from practicing law for a year, a Superior Court judge has ruled."

71. The publication that Elder had "impersonated" a fellow lawyer was false, misleading and defamatory.

72. *The Hartford Courant* has continuously to the present date made such report a news story available for public view on its website.

73. *The Hartford Courant* and its employees had in its and their possession, or access to, information which would have readily disproved the allegation of impersonation, but it and they conducted no reasonable fact-checking before negligently, recklessly and/or maliciously publishing the falsehood that Elder was guilty of impersonation. If they did conduct reasonable fact checking before publishing the said account, then the publication was done with malice.

74. Elder sustained damages, and continues to sustain damages, on account of said publications.

75. Elder claims general and punitive damages from said defendant.

**Count Two**
**Invasion of Privacy by False Light**
**Joseph S. Elder v. Tronc, Inc.**

76. Elder re-alleges and incorporates by reference paragraphs 2 through 75 as if they had been fully set forth herein.

77. The fourth paragraph of *The Hartford Courant's* news report stated: "The strange saga began in July 2004, when Plainville police blocked a local resident from entering his home while officers waited for a search warrant. After conferring by phone with Elder, the resident made his way into his house after a brief scuffle with police.  When a Plainville officer, intent on finding out who had advised the resident to ignore the police, called the phone number stored in the man's cellphone, Elder answered and allegedly identified himself as "Wes Spears" – another Hartford lawyer."

78. That fourth paragraph painted an incomplete and misleading account of the incident, Elder's advice to his client, and the "Plainville officer's" telephone

call.   The news story was reckless in its omission of the actual facts surrounding the call, failing to mention that the caller intentionally lied about his identity and that he was posing as a drug dealing criminal defendant.  The story left the impression that Elder somehow intentionally lied to a known police investigator who was working on an assigned investigation.

79. The news story also omitted the undisputed fact that when the local resident (Krajewski) conferred with Elder on the telephone, Elder made repeated attempts to speak with the police officers on site before Krajewski entered his home.  It also critically omitted the fact the police on scene refused repeatedly to speak with Elder.

80. The foregoing publications constitute an invasion of Elder's right to privacy by placing Attorney Elder in a false light in the public eye, in that the matter published (1) is not true, and (2) is a major misrepresentation of his character, professional skills, and activities.

81. *The Hartford Courant* and its employees had in its and their possession, or access to, information which would have readily shown the misrepresentative character of its published account, but it and they conducted no reasonable fact-checking before negligently, recklessly and/or maliciously publishing the falsehood that Elder was guilty of impersonation and placing him in a false light as set forth hereinbefore.  If they did conduct reasonable fact checking before publishing the said account, then the publication was done with malice.

82. *The Hartford Courant* has continuously to the present date made such report a news story available for public view on its website.

83. Elder sustained damages, and continues to sustain damages, on account of said publications.

84. Elder claims general, compensatory and punitive damages from said defendant.

**Count Three
Defamation *Per Se*
Joseph S. Elder v. Operations Holdings, Inc.**

85. Elder re-alleges and incorporates by reference paragraphs 2 through 66 as if they had been fully set forth herein.

86. The defendant Operations Holdings, Inc. is a corporation maintaining its principal office at 481 8th Avenue A12, New York City, New York 10001. Said corporation is the owner of *The Washington Times*, a daily broadsheet published in Washington D.C. with its principal address being 3600 New York Avenue NE, Washington, D.C. 20002 and maintaining a website at http://www.washingtontimes.com. The founder of the Unification Church, Sun Myung Moon, founded it in 1982 and until 2010, it was owned by News World Communications, an international media conglomerate associated with the Unification Church.

87. In a report dated August 1, 2015 *The Washington Times* first published a news story entitled "Hartford Lawyer Suspended For Impersonating Fellow Lawyer."

88. The first paragraph of said report stated, "A Connecticut judge has suspended a Hartford attorney for impersonating a fellow lawyer 11 years ago." The suspended lawyer was identified to be Elder.

89. The publication that Elder had "impersonated" a fellow lawyer was false, misleading and defamatory.

90. *The Washington Times* has continuously to the present date made such report a news story available for public view on its website.

91. *The Washington Times* and its employees had in its and their possession, or access to, information which would have readily disproved the allegation of impersonation, but it and they conducted no reasonable fact-checking before negligently, recklessly and/or maliciously publishing the falsehood that Elder was guilty of impersonation. If they did conduct reasonable fact checking before publishing the said account, then the publication was done with malice.

92. Elder sustained damages, and continues to sustain damages, on account of said publications.

93. Elder claims general and punitive damages from said defendant.

**Count Four**
**Invasion of Privacy by False Light**
**Joseph S. Elder v. Operations Holdings, Inc.**

94. Elder re-alleges and incorporates by reference paragraphs 2 through 66 as if they had been fully set forth herein.

95. Elder re-alleges and incorporates by reference paragraphs 85 through 93 as if they had been fully set forth herein.

96. The fourth, fifth and sixth paragraphs of said news story stated: "In July 2004, Plainville police prevented a man from entering his home while they waited for a search warrant.  After talking with Elder over the phone, the man went into his house anyway, following a fracas with the police. Police then called the number to find out who advised the resident to ignore the police.  They said

Elder answered the phone and identified himself as Wes Spears, another Hartford lawyer.  Police unsuccessfully sought an arrest warrant for Spears and sought disciplinary action against him until they discovered it was Elder, not Spears, on the call..."

97. Those paragraphs painted an incomplete and misleading account of the incident, Elder's advice to his client, the telephone call to Elder, and the filing of an application for an arrest warrant and grievance.  The news story was reckless in its omission of the actual facts surrounding the call, failing to mention that the caller intentionally lied about his identity and that he was posing as a drug dealing criminal defendant, never identifying himself as an investigating police officer.  The story left the impression that Elder somehow intentionally lied to a known police investigator who was working on an assigned investigation.  It further inflated the police department role in making the call, referring to police in the plural when the caller was actually just Dean Cyr pursuing a personal grudge and acting on his own.  It made it appear that Elder was defying legitimate requests of an entire police department. It further inflated their role in the filing of the subject arrest warrant and grievance.  It was only Cyr who pursued these.

98. The news story also omitted the undisputed fact that when the local resident (Krajewski) conferred with Elder on the telephone, Elder made repeated attempts to speak with the police officers on site before Krajewski entered his home.  It also critically omitted the fact the police on scene refused repeatedly to speak with Elder.

99. The foregoing publications constitute an invasion of Elder's right to privacy by placing Attorney Elder in a false light in the public eye, in that the matter published (1) is not true, and (2) is a major misrepresentation of his character, professional skills, and activities.

100.  *The Washington Times* and its employees had in its and their possession, or access to, information which would have readily shown the misrepresentative character of its published account, but it and they conducted no reasonable fact-checking before negligently, recklessly and/or maliciously publishing the falsehood that Elder was guilty of impersonation and placing him in a false light as set forth hereinbefore.  If they did conduct reasonable fact checking before publishing the said account, then the publication was done with malice.

101.  *The Washington Times* has continuously to the present date made such report a news story available for public view on its website.

102.  Elder sustained damages, and continues to sustain damages, on account of said publications.

103.  Elder claims general, compensatory and punitive damages from said defendant.

**Count Five**
**Defamation *Per Se***
**Joseph S. Elder v. Tribune Media Company**

104.  Elder re-alleges and incorporates by reference paragraphs 2 through 66 as if they had been fully set forth herein.

105.  The defendant Tribune Media Company owns the defendant Tribune Broadcasting Company, LLC, which operates as its wholly owned subsidiary.

Tribune Media Company's corporate headquarters are located at 435 North Michigan Avenue, Chicago, Illinois 60611.  In both its public statements and in filings with the Securities and Exchange Commission (SEC) Tribune Media Company represents that it is the owner of Tribune Broadcasting Company, LLC.  The defendant Tribune Broadcasting Company, LLC is an American media company that operates as a subsidiary of Tribune Media Company, a media conglomerate based in Chicago, Illinois. Tribune Broadcasting Company, LLC is organized under the laws of the State of Delaware.  Its corporate headquarters are located at 435 North Michigan Avenue, Chicago, Illinois 60611.  It owns or operates approximately forty-two television stations throughout the United States, including that one known as WTIC virtual Channel 61, a FOX affiliate, licensed to serve the Hartford, Connecticut market.  Channel 61 maintains an on-line presence at http://fox61.com.

106.   In a report dated August 1, 2015 WTIC Channel 61 first published a news story entitled "Hartford lawyer suspended for impersonating fellow lawyer." It appeared on its on-line website at http://fox61.com, and continues to be made available to the public for viewing ever since its original publication.

107.   The first paragraph of said report stated, "A Connecticut judge has suspended a Hartford attorney for impersonating a fellow lawyer 11 years ago."  The suspended lawyer was identified to be Elder.

108.   The publication that Elder had "impersonated" a fellow lawyer was false, misleading and defamatory.

109.   WTIC Channel 61 has continuously to the present date made such report
a news story available for public view on its website.

110.   WTIC Channel 61 and its employees had in its and their possession, or
access to, information which would have readily disproved the allegation of
impersonation, but it and they conducted no reasonable fact-checking before
negligently, recklessly and/or maliciously publishing the falsehood that Elder
was guilty of impersonation. If they did conduct reasonable fact checking
before publishing the said account, then the publication was done with malice.

111.   Elder sustained damages, and continues to sustain damages, on account
of said publications.

112.   Elder claims general and punitive damages from said defendant.

**Count Six**
**Invasion of Privacy by False Light**
**Joseph S. Elder v. Tribune Media Company**

113.   Elder re-alleges and incorporates by reference paragraphs 2 through 66
as if they had been fully set forth herein.

114.   Elder re-alleges and incorporates by reference paragraphs 104 through
112 as if they had been fully set forth herein.

115.   The third and fourth paragraphs of said news story stated: "In 2004, police
prevented a man from entering his home while they waited for a search
warrant.  After talking with Elder over the phone, the man went into his house
anyway, following a fracas with the police. When police called the number
they said Elder identified himself as Wes Spears, another Hartford lawyer.
Police unsuccessfully sought an arrest warrant for Spears and sought

disciplinary action against him until they discovered it was Elder, not Spears, on the call..."

116.   Those paragraphs painted an incomplete and misleading account of the incident, Elder's advice to his client, the telephone call to Elder, and the filing of an application for an arrest warrant and grievance.  The news story was reckless in its omission of the actual facts surrounding the call, failing to mention that the caller intentionally lied about his identity and that he was posing as a drug dealing criminal defendant, never identifying himself as an investigating police officer.  The story left the impression that Elder somehow intentionally lied to a known police investigator who was working on an assigned investigation.  It further inflated the police department role in making the call, referring to police in the plural when the caller was actually just Dean Cyr pursuing a personal grudge and acting on his own.  It made it appear that Elder was defying legitimate requests of an entire police department. It further inflated their role in the filing of the subject arrest warrant and grievance.  It was only Cyr who pursued these.

117.   The news story also omitted the undisputed fact that when the local resident (Krajewski) conferred with Elder on the telephone, Elder made repeated attempts to speak with the police officers on site before Krajewski entered his home.   It also critically omitted the fact the police on scene refused repeatedly to speak with Elder.

118.   The foregoing publications constitute an invasion of Elder's right to privacy by placing Attorney Elder in a false light in the public eye, in that the matter

published (1) is not true, and (2) is a major misrepresentation of his character, professional skills, and activities.

119.   WTIC Channel 61 and its employees had in its and their possession, or access to, information which would have readily shown the misrepresentative character of its published account, but it and they conducted no reasonable fact-checking before negligently, recklessly and/or maliciously publishing the falsehood that Elder was guilty of impersonation and placing him in a false light as set forth hereinbefore.  If they did conduct reasonable fact checking before publishing the said account, then the publication was done with malice.

120.   WTIC Channel 61 has continuously to the present date made such report a news story available for public view on its website.

121.   Elder sustained damages, and continues to sustain damages, on account of said publications.

122.   Elder claims general, compensatory and punitive damages from said defendant.

**Count Seven**
**Defamation *Per Se***
**Joseph S. Elder v. Nexstar Media Group, Inc.**

123.   Elder re-alleges and incorporates by reference paragraphs 2 through 66 as if they had been fully set forth herein.

124.   The defendant Nexstar Media Group, Inc. is the largest television station operator in the United States with its corporate headquarters located at 545 E. John Carpenter Freeway, Suite 700, Irving, Texas 75062. Said defendant owns 171 television stations, including that one known as WWLP Channel 22

licensed to serve the Springfield, Massachusetts market.  Channel 22, an NBC affiliate, maintains an on-line presence at http://wwlp.com ("22 News WWLP.com Working For You).  Nexstar Media Group, Inc., (formerly Nexstar Broadcasting Group, Inc.) acquired WWLP virtual Channel 22 as part of Nexstar's successful acquisition of Media General, Inc., a Virginia corporation, completing the purchase on or about January 17, 2017 following FCC approval granted on January 11, 2017.

125.   In a report dated August 2, 2015 WWLP Channel 22 first published a news story entitled "Lawyer suspended for impersonating fellow lawyer." It appeared on its on-line website at http://wwlp.com, and continues to be made available to the public for viewing ever since its original publication.

126.   The first paragraph of said report stated, "A Connecticut judge has suspended a Hartford attorney for impersonating a fellow lawyer 11 years ago."  The suspended lawyer was identified to be Elder.

127.   The publication that Elder had "impersonated" a fellow lawyer was false, misleading and defamatory.

128.   WWLP Channel 22 has continuously to the present date made such report a news story available for public view on its website.

129.   WWLP Channel22 and its employees had in its and their possession, or access to, information which would have readily disproved the allegation of impersonation, but it and they conducted no reasonable fact-checking before negligently, recklessly and/or maliciously publishing the falsehood that Elder

was guilty of impersonation. If they did conduct reasonable fact checking before publishing the said account, then the publication was done with malice.

130. Elder sustained damages, and continues to sustain damages, on account of said publications.

131. Elder claims general and punitive damages from said defendant.

**Count Eight**
**Invasion of Privacy by False Light**
**Joseph S. Elder v. Nexstar Media Group, Inc.**

132. Elder re-alleges and incorporates by reference paragraphs 2 through 66 as if they had been fully set forth herein.

133. Elder re-alleges and incorporates by reference paragraphs 123 through 131 as if they had been fully set forth herein.

134. The third and fourth paragraphs of said news story stated: "In 2004, police prevented a man from entering his home while they waited for a search warrant.  After talking with Elder over the phone, the man went into his house anyway, following a fracas with the police. When police then called the number, they said Elder identified himself as Wes Spears, another Hartford lawyer.  Police unsuccessfully sought an arrest warrant for Spears and sought disciplinary action against him until they discovered it was Elder, not Spears, on the call..."

135. Those paragraphs painted an incomplete and misleading account of the incident, Elder's advice to his client, the telephone call to Elder, and the filing of an application for an arrest warrant and grievance.  The news story was reckless in its omission of the actual facts surrounding the call, failing to

mention that the caller intentionally lied about his identity and that he was posing as a drug dealing criminal defendant, never identifying himself as an investigating police officer.  The story left the impression that Elder somehow intentionally lied to a known police investigator who was working on an assigned investigation.  It further inflated the police department role in making the call, referring to police in the plural when the caller was actually just Dean Cyr pursuing a personal grudge and acting on his own.  It made it appear that Elder was defying legitimate requests of an entire police department. It further inflated their role in the filing of the subject arrest warrant and grievance.  It was only Cyr who pursued these.

136.   The news story also omitted the undisputed fact that when the local resident (Krajewski) conferred with Elder on the telephone, Elder made repeated attempts to speak with the police officers on site before Krajewski entered his home.  It also critically omitted the fact the police on scene refused repeatedly to speak with Elder.

137.   The foregoing publications constitute an invasion of Elder's right to privacy by placing Attorney Elder in a false light in the public eye, in that the matter published (1) is not true, and (2) is a major misrepresentation of his character, professional skills, and activities.

138.   WWLP Channel 22 and its employees had in its and their possession, or access to, information which would have readily shown the misrepresentative character of its published account, but it and they conducted no reasonable fact-checking before negligently, recklessly and/or maliciously publishing the

falsehood that Elder was guilty of impersonation and placing him in a false

light as set forth hereinbefore.  If they did conduct reasonable fact checking

before publishing the said account, then the publication was done with malice.

139.   WWLP Channel 22 has continuously to the present date made such report

a news story available for public view on its website.

140.   Elder sustained damages, and continues to sustain damages, on account

of said publications.

141.   Elder claims general, compensatory and punitive damages from said

defendant.

**Count Nine**
**Defamation *Per Se***
**Joseph S. Elder v. Tribune Broadcasting Company, LLC**

142.   Elder re-alleges and incorporates by reference paragraphs 2 through 66

as if they had been fully set forth herein.

143.   The defendant Tribune Broadcasting Company, LLC is an American

media company that operates as a subsidiary of Tribune Media Company, a

media conglomerate based in Chicago, Illinois. Tribune Broadcasting

Company, LLC is organized under the laws of the State of Delaware.  Its

corporate headquarters are located at 435 North Michigan Avenue, Chicago,

Illinois 60611.  It owns or operates approximately forty-two television stations

throughout the United States, including that one known as WTIC virtual

Channel 61, a FOX affiliate, licensed to serve the Hartford, Connecticut

market.  Channel 61 maintains an on-line presence at http://fox61.com.

144.   In a report dated August 1, 2015 WTIC Channel 61 first published a news story entitled "Hartford lawyer suspended for impersonating fellow lawyer." It appeared on its on-line website at http://fox61.com, and continues to be made available to the public for viewing ever since its original publication.

145.   The first paragraph of said report stated, "A Connecticut judge has suspended a Hartford attorney for impersonating a fellow lawyer 11 years ago."  The suspended lawyer was identified to be Elder.

146.   The publication that Elder had "impersonated" a fellow lawyer was false, misleading and defamatory.

147.   WTIC Channel 61 has continuously to the present date made such report a news story available for public view on its website.

148.   WTIC Channel 61 and its employees had in its and their possession, or access to, information which would have readily disproved the allegation of impersonation, but it and they conducted no reasonable fact-checking before negligently, recklessly and/or maliciously publishing the falsehood that Elder was guilty of impersonation. If they did conduct reasonable fact checking before publishing the said account, then the publication was done with malice.

149.   Elder sustained damages, and continues to sustain damages, on account of said publications.

150.   Elder claims general and punitive damages from said defendant.

**Count Ten**
**Invasion of Privacy by False Light**
**Joseph S. Elder v. Tribune Broadcasting Company, LLC**

151.    Elder re-alleges and incorporates by reference paragraphs 2 through 66 as if they had been fully set forth herein.

152.    Elder re-alleges and incorporates by reference paragraphs 142 through 150 as if they had been fully set forth herein.

153.    The third and fourth paragraphs of said news story stated: "In 2004, police prevented a man from entering his home while they waited for a search warrant.  After talking with Elder over the phone, the man went into his house anyway, following a fracas with the police. When police then called the number, they said Elder identified himself as Wes Spears, another Hartford lawyer.  Police unsuccessfully sought an arrest warrant for Spears and sought disciplinary action against him until they discovered it was Elder, not Spears, on the call..."

154.    Those paragraphs painted an incomplete and misleading account of the incident, Elder's advice to his client, the telephone call to Elder, and the filing of an application for an arrest warrant and grievance.  The news story was reckless in its omission of the actual facts surrounding the call, failing to mention that the caller intentionally lied about his identity and that he was posing as a drug dealing criminal defendant, never identifying himself as an investigating police officer.  The story left the impression that Elder somehow intentionally lied to a known police investigator who was working on an assigned investigation.  It further inflated the police department role in making

the call, referring to police in the plural when the caller was actually just Dean

Cyr pursuing a personal grudge and acting on his own.  It made it appear that

Elder was defying legitimate requests of an entire police department. It further

inflated their role in the filing of the subject arrest warrant and grievance.  It

was only Cyr who pursued these.

155.   The news story also omitted the undisputed fact that when the local

resident (Krajewski) conferred with Elder on the telephone, Elder made

repeated attempts to speak with the police officers on site before Krajewski

entered his home.   It also critically omitted the fact the police on scene

refused repeatedly to speak with Elder.

156.   The foregoing publications constitute an invasion of Elder's right to privacy

by placing Attorney Elder in a false light in the public eye, in that the matter

published (1) is not true, and (2) is a major misrepresentation of his character,

professional skills, and activities.

157.   WTIC Channel 61 and its employees had in its and their possession, or

access to, information which would have readily shown the misrepresentative

character of its published account, but it and they conducted no reasonable

fact-checking before negligently, recklessly and/or maliciously publishing the

falsehood that Elder was guilty of impersonation and placing him in a false

light as set forth hereinbefore.  If they did conduct reasonable fact checking

before publishing the said account, then the publication was done with malice.

158.   WTIC Channel 61 has continuously to the present date made such report

a news story available for public view on its website.

159.   Elder sustained damages, and continues to sustain damages, on account of said publications.

160.   Elder claims general, compensatory and punitive damages from said defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joseph S. Elder respectfully request that this Court enter judgment in his favor against the Defendants as follows:

1. Awarding monetary general damages for defamation *per se* in an amount of not less than one million dollars;

2. Awarding compensatory damages for the invasion of privacy (false light) in an amount of not less than one million dollars;

3. Awarding punitive damages, consisting of his attorney's fees or the value thereof, incurred in the prosecution of this action;

4. Assessing costs and fees incurred in the prosecution of this action;

5. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

161.   Plaintiff demands trial by jury on all claims and issues so triable.


Respectfully submitted,


_____