UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH S. ELDER, | : | |
| | : | CASE NO. 3:17-cv-01285-WWE |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| OPERATIONS HOLDINGS, INC., | : | |
| TRONC, INC., NEXSTAR MEDIA GROUP, INC., | : | |
| TRIBUNE BROADCASTING, LLC, and | : | |
| TRIBUNE MEDIA COMPANY, | : | |
| | : | |
| Defendants, | : | JANUARY 24, 2018 |

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FILED BY DEFENDANTS
TRIBUNE MEDIA COMPANY, TRIBUNE BROADCASTING, LLC AND TRONC, INC.**

I.      **INTRODUCTION**

Joseph S. Elder, the plaintiff in the above-entitled action, hereinafter referred to as

"Attorney Elder", hereby submits this memorandum of law in opposition to the motion to dismiss

the Amended Complaint dated October 13, 2017, filed by the defendants Tribune Media

Company, Tribune Broadcasting, LLC and tronc, Inc. pursuant to Fed. R. Civ. P. 12(b)(6),

hereinafter referred to as "the moving defendants." Moving defendants assert that Attorney

Elder's defamation and false light publicity causes of action must be dismissed because they

are not based on any publication or conduct by them, but rather upon publications and conduct

"by two entities that are not parties to this action."  Alternatively, they then curiously assume a

burden existentially denied to exist by their claimed non-involvement, and argue on behalf of the

two non-parties that dismissal is required because in their opinion these claimed third party

publications were not defamatory but entitled to civil liability immunity by the protective umbrella

of the fair report privilege.

more than sufficiently identifies the moving defendants as being responsible for the publication of the defamatory statements complained of in counts one, five and nine and for the claimed false light conduct described in counts two, six and ten. Further, that the moving defendants stray far from the purpose of Rule 12(b)(c) motions designed to authorize dismissal of a complaint for failure to state a recognizable and factually based claim upon which relief can be granted when they proceed to usurp the fact-finding function of the trier of fact by their sweeping and conclusory claim that the publications in question were not defamatory but "accurate representations of the facts."  Their claims of fair report privilege are at best special defenses to be asserted in the appropriate litigation circumstances and to be determined by the trier of fact, not bootlegged into a preliminary motion and decided in the absence of evidence.

## II.    BACKGROUND

During July, 2017 Attorney Elder filed a ten-count complaint against five corporate defendants, setting forth five causes of action sounding in defamation and five sounding in invasion of privacy by false light.  On or about October 13, 2017 he amended his complaint pursuant to an agreement reached with the originally named defendant Operations Holdings, Inc., agreeing to substitute *The Washington Times* as a defendant in lieu of Operations Holdings, Inc.  On or about December 4, 2017 the moving defendants filed a Rule 12(b)(6) motion to dismiss "all claims against them in the Plaintiff's Amended Complaint," not specifying the claims by individual counts.  A review of their supporting memorandum of law clarifies that they seek a dismissal of Counts One, Two, Five, Six, Nine and Ten of the amended complaint.

## III.    LAW AND ARGUMENT

### A.  Standard Applicable to Fed. R. Civ. P. 12(b)(6) Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." The complaint must be liberally construed in the plaintiff's favor, and all facts pleaded in the complaint must be

taken as true. See *Campbell* v. *Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986), cert. denied, 476 U.S. 1159 (1986).

Historically, Rule 12(b)(6) motions were not favored. To prevail, a defendant had to establish "beyond any doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, supra. See, also, *Lowrey* v. *Texas A&M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997). This general antipathy was refined by two United States Supreme Court decisions, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The approved standard is now whether plaintiff's complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible on its face*.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (emphasis added). See also analogous language in *Little v. KPMG LLP*, 575 F.3d 533, 541 (5th Cir. 2009).

The Supreme Court's opinion changed the prevailing interpretation of the notice pleading requirements of Fed. R. of Civ. P. 8(a)(2) (and necessarily the standards for dismissal under Fed. R. of Civ.P. 12(b)(6) for failure to state a cause of action), creating a stricter standard for a complaint's required factual specificity. Previously, under the standard set forth in Conley v. Gibson, supra, a complaint need only have stated a "conceivable" set of facts to support its legal claims—that is, that a court could only dismiss a claim if it appeared, beyond a doubt, that the plaintiff would be able to prove no set of facts in support of his claim that would entitle him to relief, whether in the complaint or otherwise. In *Twombly*, the court adopted a "plausibility" standard, requiring in this case "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement (referencing the Antitrust law upon which the claim was brought)."

Accordingly, a Rule 12(b)(6) motion in any civil case is analyzed under the standard announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft* v. *Iqbal*, 556 U.S. 662, at 678-79 (2009). To survive a Rule 12(b)(6) motion, the plaintiff must state a claim that is "plausible on its face." A claim is such "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556); *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009); *Fields v. Dep't of Pub. Safety*, 911 F. Supp. 2d 373, 383 (M.D. La. 2012) (Jackson, J.). The complaint should contain "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief. *Twombly*, 550 U.S. at 557. The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The facts in the Complaint must "raise a right to relief above the speculative level," and into the "realm of plausible liability." *See Twombly*, 550 U.S. at 555. In other words, the complaint must allege enough facts to move past possibility and on to plausibility of "entitlement to relief." *Id*. at 558.

It was the absence of any detailed fact pleading that derailed the plaintiff in *Twombly,* the Supreme Court affirming that Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley* v. *Gibson*, 355 U. S. 41, 47 (1957)."  The Court continued that "While a complaint attacked by a Rule12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan* v. *American Bd. of Psychiatry and Neurology*, *Inc.*, 40 F. 3d

247, 251 (CA7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan* v. *Allain*, 478 U. S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–236 (3d ed. 2004)…("[T]he pleading must contain something more . . . than. . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, *e.g.*, *Swierkiewicz* v. *Sorema N. A.,* 534 U. S. 506, 508, n. 1 (2002); *Neitzke* v. *Williams*, 490 U. S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance. . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer* v. *Rhodes*, 416 U. S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely")… Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.  And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and "that a recovery is very remote and unlikely." *Twombly* 550 U.S. 544, at 554-555.

The sufficiency of factual allegations to survive a Rule 12(b)(6) motion to dismiss is such that the plaintiff must plead factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. A

complaint cannot simply "le[ave] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Twombly*, 550 U.S. at 561 (citation omitted).  Plaintiff's obligation to "provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932 (1986)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft* v. *Iqbal*, 556 U.S. at 678.

In ruling on a Rule 12(b)(6) motion, when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Ashcroft* v. *Iqbal*, 556 U.S. 662 at 679 Although facts properly alleged must be construed in favor of the plaintiff, a court need "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusion." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010).

### B.  Counts One, Two, Five, Six, Nine and Ten of the Amended Complaint State Legally Sufficient Claims for Relief Plausible on Their Face

Attorney Elder's amended complaint contains a thorough and factually detailed statement of the background, liability circumstances, occurrences, and events in support of his defamation and false light claims against the moving defendants, as well as the non-moving defendants. Well-pleaded specific conduct by each defendant on certain days and at certain times is alleged to render each of the defendants liable; this is no crude pleader's "bare averment that he wants relief and is entitled to it."  These are detailed factual allegations, much more by degree and amount than any skeletal

6

"unadorned, the-defendant-unlawfully-harmed-me-accusation." Moving defendants have made no claim that Attorney Elder's complaint is insufficient under the plausibility pleading standard set forth in *Twombly* and *Iqbal*. In fact, moving defendants describe the complaint as reciting a "long factual history."  Perhaps bored by its detail, they also describe the factual history as "convoluted." Attorney Elder concedes that the history may be characterized as convoluted, but only in the secondary definitional sense that it may appear intricate or complicated to some readers. They do not argue that he has failed to allege factually based causes of action for defamation and invasion of privacy (false light) upon which relief could be granted.  Rather, their primary demurrer is that no claim has been made against them that would render them liable, that no claim of any publication by them has been made.  Secondarily, they proceed to offer a defense to any such publications which they assert on behalf of "two entities that are not parties to this action;" a special defense that is more properly made in another litigation context, not part of a preliminary screening.

Paragraph three of the complaint provides a comprehensive statement of facts regarding the defendant party tronc. Inc.'s business activities, particularly as they relate to the complained of occurrences. Attorney Elder avers that "The defendant Tronc, Inc. (formerly known as Tribune Publishing Company) is an American newspaper print and online media publishing company having its corporate headquarters at 435 North Michigan Avenue, Chicago, Illinois 60611 and Web url at http://www.tronc.com, self-defining itself as operating a diversified media and marketing-solutions company, offering sports, entertainment, business, real estate, travel news and information in various markets throughout the United States.  It was incorporated and organized under the laws of the State of Delaware. Tronc, Inc.'s major newspaper assets include *The Hartford Courant*, Connecticut's largest daily morning newspaper which also has an on-line presence at http://www.courant.com." Nothing could be clearer than the claim that

this defendant is an American newsprint and online media *publishing* company (emphasis supplied) holding itself out as operating a diversified media company offering a wide variety of information in various markets throughout the United States.  Further, and specifically, Attorney Elder alleges that among its major newspaper assets is *The Hartford Courant*, Connecticut's largest daily morning newspaper which also has an on-line presence at http://www.courant.com., the paper in which the offending articles appeared.

Paragraphs 9 through 66 of the complaint recite facts common to all of the counts, providing the defendants with a thorough picture of the background and circumstances that are a common foundation of his claims or relief.  In Count One paragraph 68 once again provides a detailed description of the defendant tronc Inc.'s status and role as a newspaper print and online media publishing company, referring once again to its ownership of *The Hartford Courant*.  Paragraphs 69 through 73 describe the specific publications and conduct of that newspaper which gave rise to the damages complained of by Attorney Elder sounding in defamation.  Paragraphs 77 through 82 of the Second Count describe in detail the actions of *The Hartford Courant* which gave rise to the claimed damages for the invasion of Attorney Elder's right of privacy by placing him in a false light in the public eye to his loss. tronc, Inc. claims that a defamation claim must include "proof" that the defendant published the alleged defamatory statement, citing *Malik* v. *Carrier Corp.,* 202 F..3d 97 (2d Cir. 2000). Proof is what a party provides at trial, not in his complaint. The case confirms this understanding, opining that "liability for defamation requires proof "that the defendants published false statements that harmed the [plaintiff,] and that the defendants were not privileged to do so." *Malik* v. *Carrier Corp*., supra, at 108, citing. *Kelley* v. *Bonney*, 221 Conn. 549 (1992), wherein the Supreme Court of Connecticut, *inter alia*, upheld the trial court's directed verdict on two

defamation claims after finding that the trial record demonstrated that the plaintiff failed in his case-in-chief to offer any evidence to indicate that either defendant published statements concerning the plaintiff.  In the present case not only are we far from trial and matters of proof, but Attorney Elder has alleged more than sufficient facts regarding tronc, Inc.'s publication of the complained of material through its instrumentality and newspaper, *The Hartford Courant.*  The newspaper was the vehicle of tronc, Inc., a self-described newspaper print and on-line media company. The complaint is more than sufficient in its allegations regarding tronc, Inc.'s publishing, information providing and on-line media activities through what necessarily must be public instrumentalities and newspapers, here *The Hartford Courant.*  It is a logical and necessary nexus: to publish in a newspaper one must either create or acquire one.  Here, tronc, Inc. purchased one. To its customers, to the public, to its investors, to the government, tronc, Inc. is the proud media company self-described as being "rooted in award-winning journalism."  On September 4, 2017, just a few months ago, after the present action was filed, tronc., Inc. announced its purchase of the *New York Daily News* and in it press release describes itself:  "Headquartered in Chicago, tronc operates newsrooms in nine markets with titles including the Chicago Tribune, Los Angeles Times, The Baltimore Sun, Orlando Sentinel, South Florida's Sun Sentinel. Newport News, Virginia's Daily Press, Allentown Pennsylvania's The Morning Call, Hartford Courant, and the San Diego Union-Tribune. Our legacy of brands has earned a combined 94 Pulitzer Prizes and is committed to informing, inspiring and engaging local communities.  Our brands create and distribute content across our media portfolio, offering integrated marketing, and business services to consumers and advertisers, including digital solutions and advertising opportunities." See Exhibit A. It is spectacularly stunning to see such a media giant abandon its touted newsrooms which it claims to operate, its commitment to inform, its Pulitzer prizes, its claimed nation-wide publication role and disown a star child, or maybe it's just an

another example of success having a thousand fathers, and failure being an orphan.  In the legal context of seeking the subject dismissal it is more disturbing than amusing because it has the appearance of tainted legal alchemy and is at odds with voluminous public statements and conduct. And it is claimed without the support of factually based affidavits, intra-company contracts, state and federal tax returns and verified audits. Clearly, it is not an issue to be decided in the pursuant to, a F. R. of Civ. P. 12(b)(6) motion.

Parenthetically, in footnote 2 on page 3 of their memorandum of law in support of the motion to dismiss, the moving defendants recite what they claim are the two entities "that actually published" the claimed defamatory articles and confirm that tronc, Inc. owned an entity known as The Hartford Courant Company, LLC as of the date of a certain SEC disclosure (December, 2016).  Nothing disclosed in that footnote excludes the moving defendants as being publishers of the complained of articles as of the date of the initial publications or since such date operating as on-line media companies. Nothing therein excludes Attorney Elder from proving the liability of tronc, Inc. for the complained of publications, whether in newsprint or on-line.  The fact that there existed or exists an entity known as The Hartford Courant Company, LLC does not immunize tronc, Inc. from liability should Attorney Elder prove what he has fairly alleged.  What is shocking is that tronc, Inc. would seek to portray itself as some sort of unwitting absentee investor, unaware and unconcerned with the newsroom activities of its acquisitions, but sufficiently wily to erect and/or maintain a Cretan labyrinth of corporate subshells.  Willing to accept the crowd's Oscars and money when proffered, but too greedy to accept responsibility for its mistakes and missteps. The real facts reveal that tronc, Inc. is intimately involved in the operations of all of its newsprint papers, from *The Hartford Courant* to *The Baltimore Sun* to *The Los Angeles Times*. All of their on-line websites reveal the clear footprints of a common tronc, Inc. website developer, bearing a

common presentation and format.  The privacy policy advertised by *The Hartford Courant* is the same as that advertised by the other tronc, Inc. newspapers, and all bear prominently the tronc name.  See Exhibit B.  There is no mention of any entity called The Hartford Courant, LLC in its on-line presentations.   Google *The Hartford Courant* newspaper and it is the tronc, Inc. name that is proudly displayed in its disclosures.  Within the last week, tronc, Inc. was actively and publicly involved in a breaking scandal enveloping its *Los Angeles Times* newsroom. The CEO of the *Los Angeles Times* was placed is on an unpaid leave while under investigation by the paper's parent company, tronc, Inc., following an <u>NPR report</u> about what it said was "questionable behavior" in his past. Ross Levinsohn "has voluntarily agreed to take an unpaid leave of absence, effective immediately," Tronc CEO Justin Dearborn said in a message to employees Friday afternoon (January 19, 2018). "The company has retained Sidley Austin LLP to conduct a review of the allegations regarding his behavior." Prior to Dearborn's announcement, *The Los Angeles Times* newsroom had reportedly been speaking up loudly against Levinsohn. More than 180 newsroom staffers had signed a letter to tronc, Inc.'s board calling for Levinsohn's removal. "Levinsohn has lost credibility as the leader of one of the country's top newspapers. He has to go -- without a cent more of company money," the letter, a copy of which was obtained by CNN, said.  See Exhibit C.  There is but one reasonable conclusion: there exists no legally meaningful distance between tronc, Inc. and *The Hartford Courant* that immunize it from legal liability for the subject defamatory publications.

Attorney Elder's argument with regard to the parallel claims of the other moving defendants mirrors his response to the claims made by tronc., Inc. in the subject motion to dismiss. In paragraph 5 of his complaint he identifies the **defendant Tribune Broadcasting Company, LLC** as "an American media company which operates as a

subsidiary of Tribune Media Company, a media conglomerate based in Chicago, Illinois. Tribune Broadcasting Company, LLC is organized under the laws of the State of Delaware.   Its corporate headquarters are located at 435 North Michigan Avenue, Chicago, Illinois 60611.   It owns or operates approximately forty-two television stations throughout the United States, including that one known as WTIC virtual Channel 61, a FOX affiliate, licensed to serve the Hartford, Connecticut market.   Channel 61 maintains an on-line presence at http://fox61.com.   In paragraph 6 he identifies and describes the defendant Tribune Media Company as owning the defendant Tribune Broadcasting Company, LLC, which operates as its wholly owned subsidiary.   Tribune Media Company's corporate headquarters are located at 435 North Michigan Avenue, Chicago, Illinois 60611.   In both its public statements and in filings with the Securities and Exchange Commission (SEC) Tribune Media Company represents that it is the owner of Tribune Broadcasting Company, LLC.   Said defendant is incorporated and organized under the laws of the State of Delaware."   Paragraph 105 of Count Five once again sets forth the detailed roles of these two corporate defendants with regard to the ownership and operation of WTIC Channel 61.   The complaint then sets forth in factual detail the activities of WTIC Channel 61 which gave rise to Attorney Elder's claims.   Channel 61 was the instrumentality of these corporate defendants.   Channel 61 identifies itself on-line as a Tribune Broadcasting Company.   Attorney Elder's allegations are more than sufficient to place these defendants on notice that he intends to introduce proof of their liability as operators for the publications and conduct complained of.

Attorney Elder hereby submits that an analogous argument applies with regard to Counts Nine and Ten addressed to the defendant Tribune Broadcasting Company, LLC. He notes that he has made detailed allegations regarding the corporate status and role of said defendant as operator of WTIC Channel 61 in paragraphs 5 and 143 of his complaint.

### C. The Moving Defendants Fair Report Privilege Claims Are Matters to be Specially Alleged and Proved at Trial

The moving defendants make an unusual, and perhaps unprecedented, claim in their Rule 12(b)(6) motion.  They claim on behalf of non-parties that Attorney Elder's claims "fail as a matter of law based on the fair report privilege."

Their entire argument is based upon their personal pretrial conclusion that the complained of publications "accurately describe the circumstances." They cite cases, however, wherein such conclusory judgments are only rendered after careful consideration of the pleadings, affidavits and other proof submitted    See, for example, *Gianetti* v. *Connecticut Newspapers Pub. Co.*, 136 Conn. App. 67 (2012).  The summary judgment stage is the earliest litigation stop at which such claims are meaningfully to be considered, not during a preliminary pleading review in circumstances such as the present wherein a plaintiff has admittedly set forth detailed causes of action recognized by the forum state. This plaintiff is not required to anticipate in his complaint any special defenses or claims of privilege that may be filed, and then both deny and disprove them at this preliminary and pre-discovery stage of the litigation.

Further, the moving defendants' description of Attorney Elder's complaint is insufficient, the factual issues extending substantially beyond whether "the alleged offending allegations are fair and accurate reports of the trial court's opinion."

## IV.    CONCLUSION

Attorney Elder, the plaintiff in the above-entitled civil action, respectfully requests that this Court deny the subject motion to dismiss.

THE PLAINTIFF,
JOSEPH S. ELDER


/s/ Joseph S. Elder


**CERTIFICATION**

**I** hereby certify that on this 24th day of January, 2018, a copy of the foregoing Memorandum in Opposition was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.


THE PLAINTIFF,
JOSEPH S. ELDER


 BY:/s/ Joseph S. Elder
Joseph S. Elder (ct01518)
Law Offices of Joseph S. Elder, LLC
Post Office Box 141
Poquonock, CT 06064
Tel.: (860) 622-9585
Fax.: (860) 219-1308
E-mail: jselderesq@msn.com