UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| JOSEPH S. ELDER, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:17-cv-01285-WWE |
| | : | |
| TRONC INC., | : | |
| NEXSTAR MEDIA GROUP INC., | : | |
| TRIBUNE BROADCASTING LLC, and | : | |
| TRIBUNE MEDIA COMPANY, | : | |
| Defendants. | : | |

**MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS**

The State of Connecticut's Office of Chief Disciplinary Counsel commenced a disciplinary action against attorney Joseph S. Elder on March 2, 2015. The complaint alleged violations of Rule 4.1 and Rule 8.4(3) of the Rules of Professional Conduct arising out of two telephone calls involving Elder that were made during the summer of 2004. On July 28, 2015, the trial court entered a judgment based on disciplinary counsel's presentment complaint, ruling that Elder be suspended from the practice of law for a period of one year. See Disciplinary Counsel v. Elder, 2015 WL 5136008 (Conn. Super. Ct. Jul. 29, 2015).

On May 2, 2017, the Supreme Court of Connecticut reversed the decision of the trial court and remanded Elder's case with instructions to dismiss the complaint based on a mandatory six-year statutory limitation period which barred the action.

This is an action by Elder against various media company defendants alleging defamation and invasion of privacy by false light, stemming from defendants' coverage of the trial court's July 28, 2015, judgment. Elder's claims are based on publication of a news story in *The Hartford Courant* entitled "Attorney Suspended for Impersonating Fellow Lawyer," and a news story on Channel 61's fox61.com entitled "Hartford lawyer suspended for impersonating fellow lawyer." Elder contends

1

that the statements that Elder had "impersonated" a fellow lawyer were false, misleading and defamatory.

Defendants Tronc, Tribune Broadcasting, and Tribune Media Company have moved to dismiss the claims against them based on plaintiff's failure to allege that defendants published the statements at issue. Defendants have also moved to dismiss based on the fair report privilege described by the Restatement (Second) of Torts § 611, as adopted by Connecticut.

> **§ 611**, **Report of Official Proceeding or Public Meeting**, provides in relevant part:
>
> **The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.**
>
> \*\*\*
>
> *d. Official proceedings.* The privilege covered in this Section extends to the report of any official proceeding, or any action taken by any officer or agency of the government of the United States, or of any State or of any of its subdivisions. Since the holding of an official hearing or meeting is in itself an official proceeding, the privilege includes the report of any official hearing or meeting, even though no other action is taken. The filing of a report by an officer or agency of the government is an action bringing a reporting of the governmental report within the scope of the privilege.
>
> The privilege is thus applicable to the report of proceedings before any court, whether it is one of general or of special and limited jurisdiction. It is also applicable to the proceedings of an agency of the court, such as a grand jury returning an indictment. It applies also to the report of any other proceedings, judicial in character, which take place before administrative, executive or legislative bodies, such as an extradition hearing before the governor of a State or an impeachment proceeding before a legislative body.
>
> \*\*\*
>
> *f. Accuracy and fairness of report.* The rule stated in this Section requires the report to be accurate. It is not necessary that it be exact in every immaterial detail or that it conform to that precision demanded in technical or scientific reporting. It is enough that it conveys to the persons who read it a substantially correct account of the proceedings.
>
> Not only must the report be accurate, but it must be fair. Even a report that is accurate so far as it goes may be so edited and deleted as to misrepresent the proceeding and thus be misleading. Thus, although it is unnecessary that the report be exhaustive and

2

> complete, it is necessary that nothing be omitted or misplaced in such a manner as to convey an erroneous impression to those who hear or read it, as for example a report of the discreditable testimony in a judicial proceeding and a failure to publish the exculpatory evidence, or the use of a defamatory headline in a newspaper report, qualification of which is found only in the text of the article. The reporter is not privileged under this Section to make additions of his own that would convey a defamatory impression, nor to impute corrupt motives to any one, nor to indict expressly or by innuendo the veracity or integrity of any of the parties.
>
> ***
>
> *g. Proceedings in court that lacks jurisdiction.* The fact that a court whose proceedings are reported did not have jurisdiction over the subject matter or the person involved will not affect the existence of the privilege under the rule stated in this Section. This is true whether the lack of jurisdiction depends upon a constitutional or statutory provision or upon a rule of the common law.

Restatement (Second), Torts, Report of Official Proceeding or Public Meeting, § 611 (1977) (June 2018 Update).

Elder responds that (1) it is too early to consider a fair report privilege defense; and (2) the factual issues presented by such a defense extend substantially beyond whether the alleged offending publications are fair and accurate reports of the trial court's opinion.

The Appellate Court of Connecticut addressed the latter argument directly in <u>Burton v. American Lawyer Media, Inc.</u>, 83 Conn. App. 134, 139 (2004):

> The plaintiff argues that the court failed to consider all of the circumstances surrounding the statements. Specifically, she claims that the court acted improperly by comparing only the articles in question with the judicial decision. We disagree.
>
> In this case, after comparing the articles in question to the judicial decision, the court concluded that the articles were substantially accurate reports of the decision. We agree that the articles were substantially accurate reports of the decisions. We also conclude as a matter of law that the headline was a fair representation of the article. As such, the articles were privileged and not actionable as a matter of law. The plaintiff argues that the court should have considered all of the factors surrounding the articles. The application of the fair reporting privilege, however, requires only that the articles be substantially accurate reports on a governmental action. Because the court concluded, and we agree, that the articles were substantially accurate, the plaintiff's argument fails. There was no need for the court to go beyond the words of the articles and the judicial decision.

Id. Likewise, in the instant case the Court can conclude whether the publications at issue were substantially accurate based upon comparison of the articles with the underlying judicial decision. Indeed, the determination of whether a publication comes within the fair report privilege is a question of law for the court. Id.

Elder does not provide support for his assertion that a fair report privilege determination is premature in this instance. See Cortec Industries, Inc., 949 F.2d 42, 48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."). Moreover, a complaint is deemed to include any documents incorporated by reference. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."). The Court takes judicial notice of the underlying state court decision and the corresponding publications in *The Hartford Courant* and on fox61.com.

On July 28, 2015, the Superior Court of Connecticut entered its disciplinary opinion, ruling that Elder be suspended from the practice of law for a period of one year. *The Hartford Courant* article was first published on July 31, 2015, and the fox61.com article was first published on August 1, 2015. Elder contends that the articles' statements that he had "impersonated" a fellow lawyer were false and misleading. But as defendants point out, the Superior Court decision found that Elder "misidentified himself as Attorney Spears." Elder 2015 WL 5136008, at *1.

> The following day, when the officer called the phone number he had taken from [the suspect's] phone, he identified himself as a prospective client and the respondent identified himself as Attorney Spears. The sergeant then looked up Attorney Spears['] contact information and identity, and found Wes Spears. Ultimately, he called the person he thought to be Spears directly, spoke to Mr. Elder who again misidentified himself as Attorney Spears. This call was recorded, and the recording was admitted into evidence. (Exhibit # 5.) In that phone conversation, the officer told Elder, believing him to be Spears, that he intended to apply for an arrest warrant and file a

4

grievance complaint. Elder did not identify himself correctly at any time during the call, nor at any time subsequent. Ultimately, the application for the arrest warrant was refused and the grievance complaint was dismissed. The phone number in question was included in the grievance complaint whereupon Spears realized it was Elder's. Even though Elder had changed his phone number shortly after the initial incident, both Spears, and ultimately the officer, were able to speak to the person newly assigned the same number who advised them that she frequently received calls for Elder. That affirmed the conclusion that the phone number did not belong to Spears but instead to Elder.

Subsequently, Spears confronted Elder and asked him directly if he had impersonated him. Elder denied doing so. Ultimately, Spears filed a lawsuit against the police officer and the town of Plainville. He also filed a civil action against Elder which was tried before a jury and resulted in a verdict in Spears' favor, which included general and punitive damages. A foreclosure action resulted from efforts to collect the verdict.

\*\*\*

[Elder's] conduct throughout this incident was deceitful and dishonest. Furthermore, he misrepresented himself at the expense of another attorney. Despite his belief to the contrary, the respondent's actions caused damage to Spears, both personal and professional. Spears was the subject of the grievance complaint brought by the officer which he was forced to answer. In addition, Elder's misrepresentation caused a police officer to file an application for an arrest warrant for an incident in which Spears had no involvement. Elder's animosity towards Spears, and conversely Spears' animosity toward Elder, does not excuse Elder's behavior. His dishonesty, deceit, and misrepresentation resulted not only in damage to Spears but also to the profession as a whole. The court notes that there have been several newspaper articles relative to this incident, the related lawsuit and the related foreclosure action. The articles do not present the legal profession in a favorable light. Again, the court also finds that Elder's failure to take corrective action once he learned that his act had resulted in the consequences to Spears is also deceitful and dishonest. His trial testimony and argument suggest that he is blind to the consequences and events which his actions have set in motion. His oft-repeated claim that Spears has not suffered is simply wrong. His claim that the officer set these events in motion by putting the name "Wes" in front of the last name "Spears" ignores the simple fact that his initial deception resulted in the events that followed. His refusal to accept responsibility for his actions has been the hallmark of his behavior throughout this incident.

Id. at \*1-2.

The subject articles, which describe Elder as having impersonated another lawyer, were substantially fair and accurate reports of the Superior Court decision, and the headlines were fair representations of the articles. See Burton, 83 Conn. App. at 138 ("If the report is accurate or a fair abridgment of the proceeding, an action cannot constitutionally be maintained for defamation.").

5

Exactitude in every detail is not necessary for the fair report privilege to attach, and the accuracy required concerns the proceedings, not to the objective truth of the defamatory charges.  Id. at 140.  Finally, a reporter has no duty to investigate and scrutinize the circumstances surrounding a court decision prior to publication in order to enjoy the fair report privilege.  Id. at 141.  Such a requirement would defeat the purpose of the privilege's safe harbor.  As defendants' publications are protected by the fair report privilege, their motion to dismiss will be granted.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss [ECF No. 45] is GRANTED.

Dated this 2nd day of July, 2018, at Bridgeport, Connecticut.

/s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE